**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **DAWN STROBEL,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES DRUG ENFORCEMENT ADMINISTRATION, ET AL.,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CASE NO. 2:11CV00053** |

# DEFENDANT, LAKE COUNTY HIGH INTENSITY DRUG TRAFFICKING AREA'S ANSWER TO PLAINTIFF'S SECOND AMENDED CIVIL COMPLAINT

Defendant, High Intensity Drug Trafficking Area's ("HIDTA") for answer to the allegations in Plaintiff's Second Amended Civil Complaint which are set forth in normal typeface, provides the following answers indicated by bold typeface.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action generally pursuant to 28 U.S.C. § 1331, as it asserts claims that arise under the Constitution of the United States and laws of the United States.

**ANSWER: Defendant admits.**

2. This Court has subject matter jurisdiction of this action by reason of 5 U.S.C. § 704 because the case involves agency action regarding deprivation of rights under the Constitution of the United States and because the case involves claims that arise under 42 U.S.C.

§ 1983. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 as they are so related to the claims in the action within which this court has original jurisdiction that they form part of the same case or controversy. This court has subject matter jurisdiction over claims that arise under the Constitution of the United States against agents of the United States as stated in *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

**ANSWER: Defendant denies.**

3. This Court has personal jurisdiction over Defendants because they can be found, reside and/or transact substantial business in this judicial district.

**ANSWER: Defendant admits that Lake County HIDTA transacts business in Lake County, Indiana.**

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because events relevant to this action occurred in the District of Columbia.

**ANSWER: Defendant denies.**

**PARTIES**

5. Plaintiff Strobel is a resident of the State of Wisconsin.

**ANSWER: Defendant is without information to admit or deny.**

6. Defendant Department Enforcement Administration is a component under the Department of Justice, and the Department of Justice is a Department of the Executive Branch of the United States Government.

**ANSWER: Defendant is not familiar with Department Enforcement Agency and, therefore, denies.**

7. Defendant State of Indiana is a State of the United States of America.

**ANSWER: Defendant admits.**

8. Defendant City of Crown Point is a Third Class City of the State of Indiana as defined in Indiana Code 36-4-1-1.

**ANSWER: Defendant admits Crown Point is a City of the State of Indiana but it is without knowledge as to its statutory classification.**

9. Defendants DEA, State of Indiana, and City of Crown Point together form the joint task force known as a High Intensity Drug Trafficking Area. Lake County HIDTA is partially administered by the Department of the Executive Office of the President, the DEA as a component of the DOJ, the State of Indiana, and the City of Crown Point. Collectively, the Defendants DEA, the State of Indiana, and the city of Crown Point constitute the task force known as HIDTA, by whom the Plaintiff was employed.

**ANSWER: Defendant denies.**

10. Defendant Edward Rysiewicz ("Rysiewicz") is employed by the Drug Enforcement Administration and is currently assigned to Lake County HIDTA. Defendant Rysiewicz is a resident of the State of Indiana.

**ANSWER: Defendant admits.**

## FACTUAL ALLEGATIONS

11. The Plaintiff is a 32-year-old woman who served in the United States Army Reserve as an Intelligence Analyst from 2001 to 2007. Her duties included assembling, integrating, analyzing, and disseminating intelligence information collected from tactical, strategic, and technical sources, including multi-spectral and electro-optical data.

**ANSWER: Defendant is without information to admit or deny.**

12. The Plaintiff received a Bachelor of Arts degree in Criminal Justice, with a minor in Business, from the University of Wisconsin-Milwaukee in May 2001. In 2003 she earned an Associate's degree in Intelligence Operations from Cochise College in Cochise County, Arizona. In 2005 she had earned 24 credits toward her Master's in Business Administration from Cardinal Stritch University in Milwaukee, Wisconsin and she is currently writing her Master's thesis.

**ANSWER: Defendant is without information to admit or deny.**

13. Plaintiff began working for Lake County, Indiana High Intensity Drug Trafficking Area in December 2006. Lake County HIDTA is comprised of local, state, and federal agencies.

**ANSWER: Defendant admits plaintiff was an employee of the City of Crown Point as fiduciary of Lake County High Intensity Drug Trafficking Area program.**

14. Defendant DEA funds Lake County HIDTA. The State provides law enforcement agents and funding to Lake County HIDTA. The City of Crown Point issues paychecks to the employees of the HIDTA and is listed as the Plaintiff's employer on her W-2. Each Defendant jointly owns and controls Plaintiff's employment and together, the Defendants form the task force known as Lake County HIDTA, the Plaintiff's employer.

**ANSWER: Defendant admits the State provides law enforcement agents to Lake County HIDTA and that the City of Crown Point as fiduciary issued paychecks from January 1, 2009 to employees of HIDTA. The City of Crown Point, DEA, and State of Indiana did not direct the daily activities of Plaintiff. Defendant denies the remaining allegations.**

15. During her tenure with Lake County HIDTA, Plaintiff supported federal, state, and local agencies with drug and gang related crimes, as well as white collar crimes. She

analyzed cases using Pen Link, i2, NCIC, FinCEN, ILook, ArcVIEW, and other intelligence resources to conduct Grand Jury and imagery analyses related to narcotics and financial investigations. She specialized in forensic audits, financial fraud, and international scams and conducted interviews with informants.

**ANSWER: Defendant denies.**

16. In February or March 2007, fellow Lake County HIDTA coworker Matthew Krankovich ("Krankovich") reported to the HIDTA supervisor, Willard Bond Wells ("Bond Wells"), who is a known homophobe, that another coworker, Lisa Melone ("Melone"), was gay. Krankovich also provided Bond Wells with a picture, taken from MySpace, of the Plaintiff with an admitted gay female.

**ANSWER: Defendant denies.**

17. In March or early April 2007, Bond Wells forwarded the photo of the Plaintiff to the Plaintiff's Army Reserve unit. Although Krankovich was the one to make the disclosure to Bond Wells about the photo of the Plaintiff with a homosexual female, he did not forward the photo of the Plaintiff to her Army Reserve unit. Krankovich did not want the Plaintiff to think he was the one to send the photo to the Army, so he let the Plaintiff know that Bond Wells was the one who actually forwarded the photo to the Army Reserve.

**ANSWER: Defendant is without information to admit or deny.**

18. On April 4, 2007, HIDTA terminated Melone for being gay, and, on April 15, 2007, the U.S. Army began an investigation into the Plaintiff's potential homosexuality.

**ANSWER: Defendant denies.**

19. Between April 20 and April 23, 2007, Krankovich received twelve (12) messages

via MySpace regarding his disclosures to Bond Wells of the Plaintiff's possible homosexuality.

**ANSWER: Defendant admits that Krankovich received messages via MySpace, but denies the remaining allegations of paragraph 19.**

20. The Plaintiff did not send the messages, nor were they sent by anyone she knows. The MySpace messages contained angry statements and some perceived threats toward Krankovich for disclosing a person's homosexuality to the Army.

**ANSWER: The messages speak for themselves. Defendant denies the remaining allegation.**

21. In May 2007, Krankovich gave copies of the threatening MySpace messages to Bond Wells. Bond Wells, in turn, questioned Melone and the Plaintiff regarding the messages, putting copies of them in the Plaintiff's personnel file.

**ANSWER: Defendant admits Krankovich gave copies of MySpace messages to Bond Wells. Defendant is without information to admit or deny the remaining allegations.**

22. HIDTA also told the Plaintiff that they believed she shared a MySpace page with another person, and the MySpace page was called "F*ck the USA."

**ANSWER: Defendant denies.**

23. When questioned by Bond Wells, the Plaintiff denied having a MySpace account when questioned about the threatening messages and about the "F*ck the USA" MySpace page.

**ANSWER: Defendant is without information to admit or deny.**

24. The Plaintiff furthermore stated that she did not know who sent the threatening messages to Krankovich, although she admitted telling her friends and family about the Army investigation.

**ANSWER: Defendant is without information to admit or deny.**

25. Bond Wells told the Plaintiff that she was the "proximate cause" of the threatening messages and she needed to put a stop to the threats, even though the Plaintiff was unaware of who sent the messages and would be powerless to stop the threatening messages.

**ANSWER: Defendant is without information to admit or deny.**

26. The threatening MySpace messages were kept in the Plaintiff's personnel folder, even though the Plaintiff did not have a MySpace account and was completely unaware of who sent the threatening messages to Krankovich.

**ANSWER: Defendant denies.**

27. Following an investigation, on September 14, 2007, the U.S. Army Honorably Discharged the Plaintiff under Chapter 10, "Homosexual Conduct," of Army Regulation 135178. In exchange for her discharge to be Honorable, the Plaintiff waived her rights to a hearing before an administrative separation board regarding the grounds of her discharge.

**ANSWER: Defendant is without information to admit or deny.**

28. After Plaintiff's coworkers discovered the fact that Plaintiff was discharged from the military for homosexual conduct, agents began propositioning Plaintiff for sex and inquired into her sexual orientation.

**ANSWER: Defendant denies.**

29. One agent, Victor Moore ("Moore"), an undercover narcotic police officer from the Gary Police Department who was assigned to HIDTA, began propositioning Plaintiff in late 2007 after her military discharge.

**ANSWER: Defendant denies that Victor Moore was assigned to Lake County**

**HIDTA and is without information to admit or deny remaining allegations.**

30. Moore first told Plaintiff that if she wanted to hook up, she should call him. Plaintiff ignored his invitation.

**ANSWER: Defendant is without information to admit or deny.**

31. However, Moore continued pursuing the Plaintiff. He would pass her in the hallway or parking lot and ask if she was "scared" because she had not yet called him. He also frequently sent her text messages asking her to meet for lunch.

**ANSWER: Defendant is without information to admit or deny.**

32. Moore told Plaintiff he loved tattoos and he would love to see all of Plaintiff's tattoos.

**ANSWER: Defendant is without information to admit or deny.**

33. When Plaintiff refused to respond to Moore's requests, Moore hand-delivered photos of his genitalia to Plaintiff. Moore would walk up to Plaintiff's desk with the photos in a white envelope, toss them on her desk, and walk away.

**ANSWER: Defendant is without information to admit or deny.**

34. In spite of his efforts, Plaintiff ignored his advances. She kept their conversations brief and continued doing her job. Plaintiff felt humiliated and frightened by Moore's advances.

**ANSWER: Defendant is without information to admit or deny.**

35. Another coworker, Louie (last name unknown), an undercover narcotics officer assigned to Lake County HIDTA, approached Plaintiff in late 2007 or early 2008 and told Plaintiff she was "hot" and she should call him if she ever wants to hook up. Plaintiff ignored his request.

**ANSWER: Defendant denies that Louis (last name unknown) was assigned to participate in a Lake County HIDTA initiative, and denies he was a co-worker of Plaintiff. Defendant is without information to admit or deny remaining allegations of paragraph 35.**

36. However, he continued pursuing Plaintiff. Each time they passed in the hallway, he asked if she was scared and why she would not call him. He told Plaintiff he did not "kiss and tell" so no one had to know if they slept together. He also said, "I'm not afraid to get freaky. Because you have all those tattoos, I'm sure you're freaky too." Plaintiff felt very uncomfortable around him, so she did her best to avoid him and to continue doing her job without interference from others.

**ANSWER: Defendant is without information to admit or deny.**

37. A DEA agent, Mark Keller, began harassing Plaintiff after her military discharge in late 2007. He asked Plaintiff questions like, "Did you go out with your boyfriend this weekend?" as a way of determining Plaintiff's sexual orientation. He also made comments about her visible tattoos and asked about tattoos she had that he could not see. Plaintiff felt very uncomfortable when he made comments about her tattoos and about her dating life, and she avoided having conversations with him.

**ANSWER: Mark Keller is deceased. Defendant is without information to admit or deny.**

38. Plaintiff did not feel that she could complain to her supervisor about the behavior because the workplace was mainly made up of men and she did not think her complaints would be taken seriously. She believed that she needed to just keep quiet and do her job or else she would be retaliated against. Plaintiff did not want to be targeted for even more harassment if she

made a complaint about the behavior in the office.

**ANSWER: Defendant admits Plaintiff did not complain to her supervisor about any behavior alleged in the Second Amended Complaint, but denies the remaining allegations.**

39. Other agents made comments in the office about women in a derogatory manner. In the office one summer, the air conditioning unit did not work and the men said the women were lucky because they could wear dresses and the men wear pants. They then said, "Except Dawn [Strobel], she never wears dresses." Plaintiff believed this was a negative comment about the way she dressed and that she was being criticized for not dressing like the other women in the office.

**ANSWER: Defendant denies as to any Lake County HIDTA employees and is without information as to admit or deny any other allegation.**

40. The agents also went to Hooters for lunch and came back and made sexual comments about the women they saw at the restaurant.

**ANSWER: Defendant denies as to any Lake County HIDTA employees and is without information as to admit or deny any other allegations.**

41. Agents made frequent comments about women they saw on MySpace. They talked about how "hot" these women were.

**ANSWER: Defendant denies as to any Lake County HIDTA employees and is without information as to admit or deny any other allegations.**

42. Married agents also made comments about how they planned on going home to have sex with their wives whether their wives "want to or not."

**ANSWER: Defendant denies as to any Lake County HIDTA employees and is without information as to admit or deny any other allegations.**

43. The male agents made these comments in front of Plaintiff on an almost-daily basis. Plaintiff felt very uncomfortable with these comments, but she did not know how to put an end to the comments. Plaintiff did not feel comfortable complaining because she did not believe the treatment would stop and she was afraid of being retaliated against for making a complaint.

**ANSWER: Defendant denies.**

44. Plaintiff never responded to the sexual harassment she faced from her coworkers. She just minded her own business and excelled at her job.

**ANSWER: Defendant admits that plaintiff never complained of alleged sexual harassment, and denies the remaining allegations of paragraph 44.**

45. Bond Wells received a promotion in July or August 2007, making Ed Rysiewicz ("Rysiewicz") the Plaintiff's new supervisor and Chuck Porucznik ("Porucznik") the HIDTA Director.

**ANSWER: Defendant admits that Ed Rysiewicz was assigned to Lake County HIDTA program in May 2008 and that Porucznik became the Lake County HIDTA program director on May 27, 2008; without knowledge as to the rest of paragraph 45.**

46. Rysiewicz found out about Plaintiff's military discharge for homosexuality. He also received a copy of Plaintiff's disciplinary file and read the MySpace messages that were wrongfully placed in her file.

**ANSWER: Defendant denies.**

47. Rysiewicz made it clear to Plaintiff that he was very religious and did not approve of Plaintiff's homosexual lifestyle. Rysiewicz began treating Plaintiff in a disparate manner compared to the male analysts at HIDTA.

**ANSWER: Defendant denies.**

48. HIDTA began issuing performance reviews and Plaintiff's first review was satisfactory. Rysiewicz told Plaintiff she needed to "step up" and do more presentations. Plaintiff then began offering to do presentations, but Rysiewicz always passed her over and asked another analyst to do presentations.

**ANSWER: Lake County HIDTA conducted a performance review between January 10 and July 30, 2008, but denies the remaining allegations.**

49. Because Rysiewicz denied Plaintiff opportunities to get a better review, Plaintiff brought Rysiewicz's actions to his attention. As a result of her persistence, she finally got to do a presentation.

**ANSWER: Defendant denies.**

50. However, Rysiewicz continued scrutinizing Plaintiff's work. He frequently asked her questions like, "Why are you working with the FBI agents? I need a report of who you're working for and what you're doing." Rysiewicz never asked other analysts these questions.

**ANSWER: Defendant denies.**

51. Rysiewicz also asked Plaintiff for proof that she was earning her MBA. He did not ask for any other employee's transcripts to prove they were attending college.

**ANSWER: Defendant denies.**

52. After the Plaintiff's military discharge, she no longer had an active security

clearance, and her job required an active Secret security clearance.

**ANSWER: Defendant admits Plaintiff's job required at least an active Secret Security Clearance but is without information as to the remaining allegations of paragraph 52.**

53. As a result, on July 2, 2008, the Plaintiff applied for security clearance with the DEA.

**ANSWER: Defendant denies.**

54. However, on July 29, 2008, Rysiewicz and Porucznik verbally notified the Plaintiff that they would not submit her security clearance paperwork because they "couldn't trust [her] character based on the emails and [her military] discharge." This was in spite of the fact that the Plaintiff had not sent the emails and the fact that her military discharge was an honorable discharge.

**ANSWER: Defendant denies.**

55. Plaintiff believed Rysiewicz and Porucznik were retaliating against Plaintiff based on her sex and her sexual orientation, so Plaintiff insisted that Rysiewicz and Porucznik submit her security clearance paperwork. Subsequently, on July 30, 2008, Rysiewicz and Porucznik allowed the Plaintiff to go on Administrative Leave until she received an interim clearance.

**ANSWER: Defendant admits that plaintiff went on paid Administrative Leave from July 30, 2008 to February, 2009, and denies the remaining allegations of paragraph 55.**

56. In January 2009, the Plaintiff explained to Rysiewicz and Porucznik that she did not send the MySpace messages and should not be held accountable for them.

**ANSWER: Defendant denies.**

57. On February 9, 2009, the DEA granted the Plaintiff an interim security clearance, and she returned to work for HIDTA on February 25, 2009.

**ANSWER: Plaintiff was granted a DEA sensitive access and plaintiff returned to work February, 2009, otherwise paragraph 57 is denied.**

58. On March 17, 2009, the Plaintiff filed an email complaint with the U.S. Department of Justice ("DOJ") Inspector General regarding the denial of her security clearance and requesting the MySpace messages be removed from her file. In this complaint, the Plaintiff stated she was being denied a security clearance because DEA labeled her as a homosexual. On June 1, 2009, the DOJ informed the Plaintiff that her complaint had been transferred to the DEA.

**ANSWER: Defendant is without information to admit or deny.**

59. In spite of Rysiewicz and Porucznik's efforts to hinder Plaintiff's career success, Plaintiff was well-known among the drug enforcement agents for performing well at her job. When Plaintiff returned to HIDTA after receiving her interim clearance, agents requested that Plaintiff work with them on cases.

**ANSWER: Defendant denies the first sentence of paragraph 59, and is without information as to the remaining allegations of paragraph 59.**

60. In July 2009, agents specifically requested Plaintiff to work on an undercover sting with an FBI initiative in another city. Plaintiff was requested because she was well-known among the agents for her reputation for excellent work.

**ANSWER: Defendant denies.**

61. However, Rysiewicz did not want Plaintiff to go on the sting because she was a

woman and he thought it would be unsafe. He required Plaintiff to write a report about why she had to leave the office and who would be on the sting with her. Rysiewicz did everything he could to prevent Plaintiff from going on the sting operation.

**ANSWER: Defendant denies.**

62. Another analyst, Oliver Wells, went undercover to murder scenes out of town. Rysiewicz never had a problem with Oliver Wells going out of town on operations. Only when Plaintiff requested to go on an undercover sting did Rysiewicz raise issues with analysts going on operations.

**ANSWER: Defendant denies.**

63. Plaintiff never received the opportunity to go on the sting operation. On August 5, 2009, Rysiewicz and Porucznik told the Plaintiff that the DEA denied her Security Clearance and that it was up to her to uncover why, placing her again on Administrative Leave.

**ANSWER: Defendant denies.**

64. The DEA did not inform the Plaintiff either in writing or verbally the reason for her security clearance termination, forcing the Plaintiff to attempt to uncover the reasons why her clearance was denied. HIDTA did not provide the Plaintiff with any additional information regarding the denial of her security clearance.

**ANSWER: Defendant is without knowledge as to first sentence of paragraph 64, but denies the remaining allegation of paragraph 64.**

65. On August 13, 2009, the Plaintiff made her first effort to determine why her clearance was denied, and she contacted the DEA agent assigned to investigate her complaint. However, the agent had no information to give her due to just being assigned to her case.

**ANSWER: Defendant is without information to admit or deny.**

66. On September 3, 2009, Rysiewicz and Porucznik notified the Plaintiff that, due to the denial of her security clearance by the DEA, they were immediately terminating her position with the Lake County HIDTA because her position required the Plaintiff to hold at least a Secret clearance.

**ANSWER: Defendant admits that a letter was issued to plaintiff by Porucznik and Rysiewicz. The letter speaks for itself.**

67. HIDTA did not inform the Plaintiff the reasons for her security clearance determination, and as a result she was not afforded an opportunity to respond to the denial of her clearance.

**ANSWER: Lake County HIDTA did not deny a security clearance, therefore this is denied.**

68. Furthermore, HIDTA did not provide the Plaintiff with any evidence or documentation supporting their determination to deny her security clearance.

**ANSWER: Defendant denies, Lake County HIDTA did not deny plaintiff a security clearance nor does Lake County HIDTA have any power to grant or deny security clearances. The Office of Security Programs of DEA determined that plaintiff was not eligible for employment with any contractor of the DEA.**

69. Due to the denial of her clearance, the Plaintiff lost her job at HIDTA.

**ANSWER: The letter speaks for itself, however, when DEA did not grant a security clearance there was no other position for plaintiff.**

70. After the Plaintiff was terminated, she continued her investigation into the denial

of her security clearance. She filed a FOIA request on in early October 2009 to request the documents used when DEA made the determination to deny her security clearance.

**ANSWER: Defendant admits that plaintiff filed a FOIA request but denies the remainder of paragraph 70.**

71. OPM responded to the Plaintiff's request in a letter dated October 16, 2009, which contained documents from the background investigation conducted for her security clearance. However, additional relevant documents were withheld from the file.

**ANSWER: Defendant is without knowledge to admit or deny.**

72. On February 10, 2010, OPM sent a follow up response, which contained redacted documents used in the security clearance background investigation. The documents were heavily redacted, inhibiting the Plaintiff's ability to respond to the charges against her.

**ANSWER: Defendant is without knowledge to admit or deny.**

73. The documents provided by OPM did not contain the specific reasons for the action of removing the Plaintiff's security clearance.

**ANSWER: Defendant is without knowledge to admit or deny.**

74. In August 2010, Plaintiff submitted a Privacy Act request to the Defense Security Service (DSS) requesting all documents regarding the denial of her security clearance.

**ANSWER: Defendant is without knowledge to admit or deny.**

75. The DSS responded on August 11, 2010 and stated the Plaintiff was granted eligibility for a Top Secret – Sensitive Compartmentalized Information ("TS-SCI") clearance on June 1, 2010. Plaintiff's clearance was never denied.

**ANSWER: Defendant is without knowledge to admit or deny.**

76. HIDTA terminated Plaintiff's employment under the pretense that DEA denied her security clearance.

**ANSWER: Deny any pretense, admit that HIDTA gave plaintiff a letter indicating the reason for her termination.**

77. The only other reason HIDTA ever gave Plaintiff for placing her on administrative leave was the fact that they "couldn't trust [her] character based on the emails and [her military] discharge." Plaintiff repeatedly denied any involvement with the MySpace messages and her security clearance was not denied, so the only basis remaining for HIDTA terminating Plaintiff's employment is her sexual orientation.

**ANSWER: Defendant denies.**

78. Plaintiff filed a timely charge with the Equal Employment Opportunity Commission against Lake County HIDTA for discrimination on the basis of sex. Plaintiff received a right-to-sue letter dated August 24, 2010.

**ANSWER: Defendant is without information to admit or deny to the first sentence. The EEOC issued a determination on August 24, 2010 that it "is unable to conclude that the information contained establishes violations of the statutes."**

## COUNT I

**Deprivation of Fifth and Fourteenth Amendment Procedural Due Process**
**5 U.S.C. § 704, against Defendant Drug Enforcement Administration**
**42 U.S.C. § 1983, against Defendants State of Indiana, City of Crown Point, and Lake County HIDTA**
**Bivens action against Defendant Edward Rysiewicz**

79. Plaintiff hereby incorporates and realleges the allegations set forth in the

preceding paragraphs as though fully alleged herein.

**ANSWER: Defendant incorporates and restates its answers to paragraphs 1-78, as though fully set forth herein.**

80. To have a constitutionally protected property interest in a government benefit, a person "must have more than an abstract need or desire for it....He must, instead, have a legitimate claim of entitlement to it." See Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

**ANSWER: No response is required as paragraph 80 is not an averment of fact.**

81. A federal employee may not be deprived of a property interest without procedural protections provided for in 5 U.S.C. § 7513.

**ANSWER: Defendant denies, further, this statute is inapplicable.**

82. When HIDTA terminated the Plaintiff's employment, she was entitled to specific procedural due process rights in regard to the termination of her security clearance.

**ANSWER: Defendant denies.**

83. As a federal employee, Plaintiff is entitled to 30 days' advance written notice stating the "specific reasons for the proposed action," a reasonable time to respond but not less than 7 days to respond and to submit evidence in support of her answer, a written decision and specific reason for the action. 5 U.S.C. § 7513. If the adverse action is sustained, Plaintiff is entitled to appeal the decision to the Merit Systems Protection Board. 5 U.S.C. § 7513(d).

**ANSWER: Defendant denies that plaintiff is a federal employee, and further defendant denies the remainder of this paragraph.**

84. Plaintiff is also entitled to supporting material justifying the adverse action upon her request to the agency. 5 U.S.C. § 7513(e).

**ANSWER: Defendant denies.**

85. DEA did not provide the Plaintiff the procedural due process rights she was entitled to as set forth above.

**ANSWER: Defendant denies that DEA is plaintiff's employer.**

86. DEA did not provide the Plaintiff written notice of the decision to place her on administrative leave in July 2008.

**ANSWER: DEA was not plaintiff's employer nor did DEA place plaintiff on leave to defendants knowledge.**

87. Further, DEA did not provide the Plaintiff written notice regarding her proposed termination in August 2009, nor was she provided the specific reasons for the proposed action when HIDTA terminated her employment in September 2009.

**ANSWER: Defendant denies. Plaintiff was not a DEA employee, Lake County HIDTA gave plaintiff a letter which speaks for itself.**

88. The DEA also did not inform the Plaintiff of her right to appeal the action to the Merit Systems Protection Board or any other entity.

**ANSWER: Defendant denies that plaintiff had the right to appeal to the MSPB.**

89. As an Indiana state employee, Plaintiff is entitled to at least 30 days' notice of the termination by written statement listing the reasons for dismissal. Plaintiff then gets the opportunity to file a written statement regarding the proposed dismissal and right to appeal the final determination. Ind. Code § 4-15-2-34.

**ANSWER: Defendant denies plaintiff was an Indiana State Employee and denies**

**the remainder of paragraph 89.**

90. As a municipal employee, the City of Crown Point is required to file with the city clerk a written statement of the reasons for dismissing Plaintiff's employment.

**ANSWER: Defendant denies.**

91. Plaintiff did not receive any notice of her proposed removal by any entity.

**ANSWER: Defendant denies.**

92. The Plaintiff's procedural due process rights were violated because the DEA, State of Indiana, and City of Crown Point failed to provide the Plaintiff procedural process protections by failing to provide her notice of the proposed action and an opportunity to respond to the action.

**ANSWER: Defendant denies.**

93. The DEA is liable to the Plaintiff for deprivations of procedural due process under 5 U.S.C. § 704.

**ANSWER: Defendant denies.**

94. The State of Indiana, the City of Crown Point, and Lake County HIDTA are liable to the Plaintiff for deprivations of procedural due process under 42 U.S.C. § 1983.

**ANSWER: Defendant denies.**

95. Defendant Rysiewicz is liable to the Plaintiff for deprivations of procedural due process because Rysiewicz failed to provide Plaintiff the reasons for the DEA's proposed action and did not provide Plaintiff an opportunity to respond to the action.

**ANSWER: Defendant denies.**

**COUNT II**

**Deprivation of Fifth and Fourteenth Amendment Substantive Due Process**
**5 U.S.C. § 704, against Defendant Drug Enforcement Administration**
**42 U.S.C. § 1983, against Defendants State of Indiana, City of Crown Point, and Lake County HIDTA**
**Bivens action against Defendant Edward Rysiewicz**

96. Plaintiff hereby incorporates and realleges the allegations of the preceding paragraphs as though fully alleged herein.

**ANSWER: Defendant incorporates and restates its answers to paragraphs 1-95, as though fully set forth herein.**

97. Plaintiff has a property right in her continued employment, Loudermill, 470 U.S. at 538-39; King, 75 F.3d at 661, and there is a deprivation of a property interest when a person is deprived of the means of livelihood, Loudermill at 542-43. Further, the Plaintiff had a reasonable expectation to be employed. Roth, 408 U.S. at 557.

**ANSWER: Defendant denies, although this appears to be argument to which no response is required.**

98. HIDTA, by and through all defendants, deprived the Plaintiff of her property right in continued employment and thus deprived her of the means of livelihood by terminating the Plaintiff's employment on the basis of her homosexuality.

**ANSWER: Defendant denies.**

99. When HIDTA terminated Plaintiff's employment, Plaintiff was deprived of her means of livelihood and her ability to earn a wage.

**ANSWER: Defendant denies.**

100. The Plaintiff has a right to her continued employment, and because HIDTA, by and through all defendants, wrongfully removed her security clearance, HIDTA subsequently deprived the Plaintiff of her substantive due process right to a wage and continued employment.

**ANSWER: Defendant denies.**

101. The DEA is liable to the Plaintiff for deprivations of substantive due process under 5 U.S.C. § 704.

**ANSWER: Defendant denies.**

102. The State of Indiana and the City of Crown Point are liable to the Plaintiff for deprivations of substantive due process under 42 U.S.C. § 1983.

**ANSWER: Defendant denies.**

103. Defendant Edward Rysiewicz deprived Plaintiff of her property right in continued employment and deprived her of the means of livelihood by terminating the Plaintiff's employment on the basis of her homosexuality.

**ANSWER: Defendant denies.**

**COUNT III**

**Deprivation of Fifth and Fourteenth Amendment Equal Protection**
**5 U.S.C. § 704, against Defendant Drug Enforcement Administration**
**42 U.S.C. § 1983, against Defendants State of Indiana, City of Crown Point, and Lake County HIDTA**
**Bivens action against Defendant Edward Rysiewicz**

104. Plaintiff hereby incorporates and realleges the allegations of the preceding paragraphs as though fully alleged herein.

**ANSWER: Defendant incorporates and restates its answers to paragraphs 1-103,**

**as though fully set forth herein.**

105. The Equal Protection Clause states that "no state shall…deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

**ANSWER: No answer is required because this is not an averment of fact.**

106. The equal protection component of the Fourteenth Amendment is binding upon the federal government as part of the Fifth Amendment's due process clause. Padula v. Webster, 822 F.2d 97, 101 n.5 (D.C. Cir. 1987).

**ANSWER: No answer is required because this is argument and not an averment of fact.**

107. The equal protection constitutional analysis to be employed in cases involving homosexuals is rational basis. See id.; High Tech Gays v. DISCO, 895 F.2d 563 (9th Cir. 1990).

**ANSWER: No answer is required because this is not an averment of fact.**

108. Currently, the government attempts to rationally justify consideration of homosexual conduct that could adversely affect the government by claiming homosexuals may be subject to blackmail and coercion. See Padula, 882 F.2d at 104; see also Doe v. Webster, 769 F. Supp. 1, 3 (D.C. Cir., 1991) ("The fact is that homosexual conduct is a characteristic that hostile intelligence services are likely to target, and at least some homosexuals may be coerced or manipulated.") Thus, the courts deny equal protection of the laws to homosexuals because of fear that homosexuals may adversely affect the government by being subjected to blackmail or coercion.

**ANSWER: This is argument to which no response is required, however, defendant denies.**

109. Nonetheless, the government may not implement policies that simply give effect to society's prejudices. *Pruitt v. Cheney*, 963 F.2d 1160, 1195 (9th Cir. 1991) ("Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect." (quoting *Palmore v. Sidoti*, 466 U.S. 429, 433 (1984))). A policy that allows the government to discriminate based on sexual orientation gives effect to society's prejudices and thus violates the Equal Protection Clause of the Fourteenth Amendment.

**ANSWER: This is argument to which no response is required, however, defendant denies.**

110. The Plaintiff suffered a violation of her right to receive equal protection under the law that would be afforded to non-homosexual citizens because HIDTA denied her security clearance based on her sexual orientation.

**ANSWER: Defendant denies, further, Lake County HIDTA did not deny her security clearance.**

111. When HIDTA first informed the Plaintiff of the action to remove not submit her paperwork to renew her security clearance, HIDTA stated they "couldn't trust [her] character based on the emails and [her military] discharge."

**ANSWER: Defendant denies.**

112. Because HIDTA did not provide the Plaintiff with proof linking her to the MySpace emails, HIDTA only could have relied upon the Plaintiff's honorable discharge from the Army Reserve to support the decision to terminate the Plaintiff's clearance.

**ANSWER: Defendant denies, although this statement is argumentative and self-serving, thus improper.**

113. However, the Plaintiff's discharge was an *honorable discharge* from the U.S. Army Reserve *based on homosexual conduct*. The fact that HIDTA is relying upon the Plaintiff's honorable discharge from the military to deny her security clearance indicates that HIDTA is denying the Plaintiff's security clearance on the basis of her homosexuality, because HIDTA cannot have a legitimate basis for denying a security clearance based on an honorable military discharge.

**ANSWER: Defendant denies.**

114. Because HIDTA discriminated on the basis of homosexual conduct by denying the Plaintiff's security clearance on the basis of her homosexuality, HIDTA's action in denying the Plaintiff's security clearance violates the Equal Protection Clause.

**ANSWER: Lake County HIDTA did not deny Plaintiff's security clearance and denies all remaining allegations of paragraph 114.**

115. Furthermore, HIDTA may not deny the Plaintiff equal protection under the law based on her homosexuality by claiming she is subject to blackmail or coercion due to her sexual orientation.

**ANSWER: HIDTA did not take any action alleged in paragraph 115 and therefore denies.**

116. The Plaintiff is openly homosexual, so it is impossible that anyone could use her homosexuality as a basis for blackmail or coercion.

**ANSWER: Defendant denies.**

117. HIDTA did not provide the Plaintiff with a rational basis for her termination. HIDTA claimed the DEA denied the Plaintiff's security clearance, which resulted in her

termination. However, HIDTA knew that the DEA had not terminated Plaintiff's security clearance because the investigation did not end until June 1, 2010, at which time the Plaintiff was granted TS-SCI eligibility for a security clearance.

**ANSWER: Defendant denies.**

118. Thus, the Plaintiff was not given a rational basis for the denial of her security clearance because HIDTA provided no legitimate basis for the denial of the Plaintiff's clearance.

**ANSWER: Defendant denies.**

119. Because HIDTA denied the Plaintiff's clearance on the basis of her sexual orientation and failed to provide any basis for the denial other than her homosexuality, HIDTA deprived the Plaintiff of equal protection under the law, thus depriving her of her Fourteenth Amendment rights.

**ANSWER: Defendant denies.**

120. The DEA is liable to the Plaintiff for deprivations of equal protection under 5 U.S.C. § 704.

**ANSWER: Defendant denies.**

121. The State of Indiana and the City of Crown Point are liable to the Plaintiff for deprivations of equal protection under 42 U.S.C. § 1983.

**ANSWER: Defendant denies.**

122. Defendant Edward Rysiewicz terminated Plaintiff's employment based on the fact that Plaintiff is a homosexual and Rysiewicz disagrees with Plaintiff's lifestyle, and he is liable to Plaintiff for deprivations of equal protection.

**ANSWER: Defendant denies.**

**<u>COUNT IV</u>**
**Disparate Treatment**
**Title VII of the Civil Rights Act of 1964 (Title VII)**
**42 U.S.C. § 2000e, *et seq.***
**Against Defendants State of Indiana, City of Crown Point, and Lake County HIDTA**

123. Plaintiff hereby incorporates and realleges the allegations of the preceding paragraphs as though fully alleged herein.

**ANSWER: Defendant incorporates and restates its answers to paragraphs 1-123, as though fully set forth herein.**

124. Plaintiff is a "person" and an "employee" as the terms are defined in 42 U.S.C. § 2000e(a) and (f), respectively. Defendants are "employers" as the term is defined in 42 U.S.C. § 2000e(b).

**ANSWER: Defendant denies.**

125. Plaintiff suffered discrimination on the basis of her sex from her supervisors and coworkers while employed by HIDTA.

**ANSWER: Defendant denies.**

126. Plaintiff's supervisors and coworkers made discriminatory remarks about Plaintiff based on her sex.

**ANSWER: Defendant denies.**

127. Plaintiff's supervisor denied Plaintiff favorable job assignments because of her sex while providing male employees with more favorable job assignments and opportunities.

**ANSWER: Defendant denies.**

128. Plaintiff's supervisor also denied Plaintiff the opportunity to advance in her career and to earn a better performance evaluation, but did not deny male analysts favorable career opportunities.

**ANSWER: Defendant denies.**

129. Plaintiff's supervisor placed additional demands on Plaintiff that he did not require of other employees, such as requiring Plaintiff to justify why she should go on training or assignments out of the office. He also required Plaintiff to provide proof of her enrollment in an MBA program when he did not require other analysts to provide proof of enrollment in college courses.

**ANSWER: Defendant denies.**

130. When Plaintiff had the opportunity to participate in a sting operation, her supervisor did everything he could to prevent Plaintiff from going on the operation, even though men were allowed to go on operations without issue.

**ANSWER: Defendant denies.**

131. Plaintiff demands such legal or equitable relief as will effectuate the purposes of 42 U.S.C. § 2000e et seq., including, but not limited to, the following:

a. economic damages including front and back pay;
b. compensatory damages;
c. punitive damages;
d. reasonable attorney's fees;
e. court costs; and any other relief that this Court deems just and equitable.

**ANSWER: Defendant denies.**

**<u>COUNT V</u>**
**Hostile Work Environment**

**Title VII of the Civil Rights Act of 1964 (Title VII)**
**42 U.S.C. § 2000e, *et seq.***
**Against Defendants State of Indiana, City of Crown Point, and Lake County HIDTA**

132. Plaintiff hereby incorporates and realleges the allegations of the preceding paragraphs as though fully alleged herein.

**ANSWER: Defendant incorporates and restates its answers to paragraphs 1-131, as though fully set forth herein.**

133. Plaintiff is a "person" and an "employee" as the terms are defined in 42 U.S.C. § 2000e(a) and (f), respectively. Defendants are "employers" as the term is defined in 42 U.S.C. § 2000e(b).

**ANSWER: Defendant denies.**

134. Plaintiff suffered daily harassment on the basis of her sex from her coworkers while employed by HIDTA.

**ANSWER: Defendant denies.**

135. Plaintiff's coworkers propositioned Plaintiff for sex on a frequent basis. Even when Plaintiff refused their offers, they continued to pursue Plaintiff and ask her to engage in sexual behavior.

**ANSWER: Defendant denies.**

136. When Plaintiff refused the offers, her coworkers asked her if she was "scared" to engage in sexual activity with them.

**ANSWER: Defendant denies.**

137. Plaintiff's coworkers also made inappropriate comments about Plaintiff's sexual orientation, inquiring into her personal life as a way of determining whether or not Plaintiff was a homosexual.

**ANSWER: Defendant denies.**

138. Plaintiff's coworkers asked Plaintiff about her tattoos, saying she was "freaky" because she had tattoos. They also remarked that other women wore dresses, while Plaintiff wore pants like the men did.

**ANSWER: Defendant denies.**

139. One of Plaintiff's coworkers pursued Plaintiff continually, and in spite of Plaintiff ignoring his advances, he persisted in his efforts to convince Plaintiff to engage in sexual conduct with him. When Plaintiff continued to ignore him, he emailed Plaintiff photos of his genitalia in an attempt to intimidate Plaintiff and convince her to engage in sexual conduct with him.

**ANSWER: Defendant denies.**

140. Plaintiff's coworkers also engaged in frequent sexual banter in the workplace, talking about how "hot" women were. They also made comments about how they were going to go home and engage in sexual conduct with their wives, even if their wives did not want to have sex.

**ANSWER: Defendant denies.**

141. As a result of the sexual banter in the office, Plaintiff felt humiliated and demeaned. She felt very uncomfortable around her coworkers. Because Plaintiff's supervisor

treated Plaintiff differently based on her sex and denied her opportunities to advance in her career, Plaintiff did not believe she could raise a complaint about the sexual harassment she faced at work.

**ANSWER: Defendant denies.**

142. Plaintiff demands such legal or equitable relief as will effectuate the purposes of 42 U.S.C. § 2000e *et seq.*, including, but not limited to, the following:

f. economic damages including front and back pay;
g. compensatory damages;
h. punitive damages;
i. reasonable attorney's fees;
j. court costs; and any other relief that this Court deems just and equitable.

**ANSWER: Defendant denies.**

**COUNT VI**
**Deprivation of Equal Protection**
**Ind. Const. Art. 1,§ 23**
**Against Defendants State of Indiana, City of Crown Point, and Lake County HIDTA**

143. Plaintiff hereby incorporates and realleges the allegations of the preceding paragraphs as though fully alleged herein.

**ANSWER: Defendant incorporates by reference its answers to paragraphs 1-142, as though fully set forth herein.**

144. The Indiana Constitution says no privileges shall be granted that do not equally belong to all citizens. Ind. Const. Art. 1, §23.

**ANSWER: The Indiana Constitution Art. 1, § 23 speaks for itself.**

145. The Plaintiff suffered a violation of her right to receive equal protection under the law that would be afforded to non-homosexual citizens because HIDTA denied her security clearance based on her sexual orientation.

**ANSWER: Defendant denies.**

146. When HIDTA first informed the Plaintiff of the action to remove not submit her paperwork to renew her security clearance, HIDTA stated they "couldn't trust [her] character based on the emails and [her military] discharge."

**ANSWER: Defendant denies.**

147. Because HIDTA did not provide the Plaintiff with proof linking her to the MySpace emails, HIDTA only could have relied upon the Plaintiff's honorable discharge from the Army Reserve to support the decision to terminate the Plaintiff's clearance.

**ANSWER: Defendant denies.**

148. However, the Plaintiff's discharge was an *honorable discharge* from the U.S. Army Reserve *based on homosexual conduct*. The fact that HIDTA is relying upon the Plaintiff's honorable discharge from the military to deny her security clearance indicates that HIDTA is denying the Plaintiff's security clearance on the basis of her homosexuality, because HIDTA cannot have a legitimate basis for denying a security clearance based on an honorable military discharge.

**ANSWER: Defendant is without information as to the first sentence of paragraph 148. Defendant denies the remaining allegations of paragraph 148.**

149. Because HIDTA discriminated on the basis of homosexual conduct by denying

the Plaintiff's security clearance on the basis of her homosexuality, HIDTA's action in denying the Plaintiff's security clearance violates the Equal Protection Clause.

**ANSWER: Defendant denies.**

150. Because HIDTA denied the Plaintiff's clearance on the basis of her sexual orientation and failed to provide any basis for the denial other than her homosexuality, HIDTA deprived the Plaintiff of equal protection under the law, thus depriving her of her Fourteenth Amendment rights.

**ANSWER: Defendant denies.**

WHEREFORE, Defendant Lake County HIDTA prays that Plaintiff take nothing by way of her Second Amended Complaint, and that the Court award Defendant costs and attorney fees.

**ADDITIONAL DEFENSES**

Defendant Lake County HIDTA for further affirmative defenses to Plaintiff's Second Amended Complaint, states:

1. Plaintiff's Complaint fails to state a claim upon which relief can be granted.
2. Plaintiff was not a federal employee but was administered employee benefits by the City of Crown Point as fiduciary agent of the Lake County HIDTA program.
3. Plaintiff was not a state employee.
4. Plaintiff's discharge resulted from an adverse determination concerning her suitability to access DEA sensitive information and workplace which resulted in a lack of security clearance by DEA.
5. This Court lacks subject matter jurisdiction to adjudicate a discretionary determination by DEA that plaintiff was not suitable for access to DEA's

databases or workspace.

6. This Court lacks jurisdiction to change or consider a determination by DEA, concerning the agency's grant or not accepting a security clearance.

7. This defendant has qualified immunity.

8. Plaintiff's Complaint contains unnecessary and improper statements, argument and conclusion and should be stricken.

9. Plaintiff has no Constitutional or substantial right of review of a decision concerning grant or denial of a security clearance or determination as to suitability to use DEA databases or workspace.

10. The claim is barred because Plaintiff failed to satisfy administrative and jurisdictional prerequisites to maintenance of this action.

11. Any and all actions or decisions made by Defendant concerning Plaintiff were based on legitimate nondiscriminatory business reasons and the Defendant acted in good faith.

12. Plaintiff has failed to mitigate her damages and Defendant is entitled to a set off to the extent the Plaintiff has or in the future may mitigate her damages.

13. Plaintiff unreasonably failed to utilize available policies and procedures for reporting complaints of discrimination.

14. Defendant had no notice of alleged discrimination or retaliation.

15. Plaintiff's state law claims are barred by the Indiana Worker's Compensation Act, and this Court lacks subject matter jurisdiction over those claims.

16. Lake County HIDTA is not a "person" that can properly be sued under section

1983, and it is not a proper defendant under Indiana law.

17. Any allegation not specifically admitted, controverted or denied previously in this Answer is now denied.

18. Plaintiff's claim for damages is limited under applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant Lake County HIDTA prays that Plaintiff take nothing by her complaint, and that the Court award Defendant costs and attorney fees.

Respectfully submitted,

**HOEPPNER WAGNER & EVANS LLP**

By: s/ John E. Hughes
John E. Hughes
Attorney for Lake County HIDTA
Attorney No. 7871-64

HOEPPNER WAGNER & EVANS LLP
1000 East 80th Place
Suite 606 South Tower
P.O. Box 10627
Merrillville, IN 46411-0627
219/769-6552

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Heather D. Graham-Oliver
US Attorney's Office - Was/DC
501 3rd Street Room 44808
Washington, DC 20530

Joseph S. Reid - AUSA
US Attorney's Office - Ham/IN
5400 Federal Plaza, Suite 1500
Hammond, IN 46320

David A. Arthur
Laura L. Bowker
Indiana Attorney General's Office
302 W. Washington Street, 5th Floor
Indianapolis, IN 46204-2770

Edward Ross Levin
Henry Adam Platt
Saul Ewing LLP
2600 Virginia Avenue NW, Ste 1000
Washington, DC 20037

Matthew L. Hinkle
Coots, Henke & Wheeler, P.C.
255 E. Carmel Drive
Carmel, IN 46032

Kevin W. Betz and Sandra Blevins
Betz & Blevins
One Indiana Square, Ste 1600
Indianapolis, IN 46204

I further certify that on March 31, 2011, I served the foregoing on the following counsel of record by United States Postal Service, first-class postage prepaid and affixed:

R. Scott Oswald
David Lawrence Scher
The Employment Law Group PC
888 17th Street NW, Suite 900
Washington, DC 20006

s/ John E. Hughes

HOEPPNER WAGNER & EVANS LLP
1000 East 80th Place, 6th Floor South
Merrillville, Indiana 46410
Telephone: (219) 769-6552